IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RETAILERS NATIONAL BANK, | No. C 03-4190 CW |
| Plaintiff, | ORDER GRANTING MOTION TO REMAND |
| v. | |
| LISA HARDING and DOES 1 through 15, inclusive, | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS | |

Plaintiff Retailers National Bank (Retailers) sued in State court to collect a credit card debt from Defendant Lisa Harding. Ms. Harding, along with her husband Andrew Harding, counterclaimed against Retailers and a host of financial entities (collectively, Counterclaim-Defendants) involved in issuing credit cards to them. The Hardings' counterclaims (denominated a "cross-complaint" in the parties' papers) assert that Counterclaim-Defendants violated various State and federal laws, including California Business & Professions Code § 17200 et seq., by extending credit to the Hardings to purchase "chips" to use at offshore on-line gambling sites. The Hardings seek, both individually and on behalf of the

general public, declaratory and injunctive relief relating to Counterclaim-Defendants' collection of past on-line gambling debts and the processing of future on-line gambling transactions.

While the case was in State court, the Hardings served their counterclaims on some, but not all, Counterclaim-Defendants. On September 12, 2003, Citibank, NA, a Counterclaim-Defendant served in State court, removed the action to this Court under the Edge Act, 12 U.S.C. § 632, which provides that federally chartered corporations may remove suits arising out of foreign banking transactions. Retailers, the other Counterclaim-Defendant served in State court, joined in the removal. Remaining Counterclaim-Defendants were served following removal to federal court.

Four Counterclaim-Defendants (Fleet Financial Group, Inc., Citibank, Discover Financial Services, Inc., and MBNA America Bank, NA) moved pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., to stay this case and compel arbitration of the Hardings' counterclaims pursuant to the arbitration clauses of the cardmember agreements the Hardings entered into with each of them. MBNA America Bank and Visa International Association and Visa USA, Inc., (collectively, Visa), joined by MasterCard International, Inc., and Providian Financial Services, moved to stay the action against them pending any arbitration of the Hardings' counterclaims. The Hardings oppose arbitration of their counterclaims.

The Court, the Honorable Vaughn R. Walker presiding, heard oral argument on these motions on March 17, 2005. Following the hearing, the Court requested supplemental briefing and sua sponte raised the question of its subject matter jurisdiction. On April

2

1  28, 2005, the Hardings moved to remand the case for lack of subject
2  matter jurisdiction or, in the alternative, to sever and remand
3  certain counterclaims.  Chief Judge Walker heard further oral
4  argument on June 2, 2005.  Both before and after this hearing, the
5  Court asked Counterclaim-Defendants to address whether the
6  "merchant banks" involved in the transactions in this case were
7  foreign.  On March 29, 2006, Chief Judge Walker recused himself
8  from the case, and it was reassigned to the undersigned on April 4,
9  2006.

10  Having considered the papers filed by the parties and the
11 transcripts of the hearings before Chief Judge Walker, the Court
12 grants the Hardings' motion to remand on the grounds of lack of
13 subject matter jurisdiction.  Accordingly, the Court denies as moot
14 Counterclaim-Defendants' various motions to compel arbitration and
15 motions to stay.  The Hardings' objections to Counterclaim-
16 Defendants' evidence are overruled as moot.

                              DISCUSSION

I.  Edge Act Jurisdiction

The notice of removal specifies that the Edge Act is the source of federal jurisdiction and the basis of removal for this case.  The Edge Act provides, in relevant part:

> [A]ll suits of a civil nature . . . to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking . . . or out of other international or foreign financial operations . . . shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof,

3

|   |   |
|---|---|
| 1 | remove such suits from a State court into the |
| 2 | district court of the United States for the proper district by following the procedure for |
| 3 | the removal of causes otherwise provided by law. |

12 U.S.C. § 632.  Although there is scant appellate authority on this jurisdictional grant, courts applying this provision have generally begun "with the well recognized proposition that removal statutes should be strictly construed with all doubts being resolved against the removing party." <u>Telecredit Serv. Center v. First Nat'l Bank of the Florida Keys</u>, 679 F. Supp. 1101, 1103 (S.D. Fla. 1988).  Indeed, the removing party has the burden of proving that a court has jurisdiction.  <u>Cf.</u> <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566-67 (9th Cir. 1992) (In removed diversity cases, if the jurisdictional basis is unclear "then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount."); <u>see also</u> <u>id.</u> at 567 ("[T]he court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.") (emphasis omitted) (quoting <u>McNutt v Gen. Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936)).

The required elements of the Edge Act are clear from the statute and have been consistently interpreted by district courts:

> "[T]o establish jurisdiction under the Edge Act:  '1) the suit must be civil in nature; 2) one of the parties at interest is a corporation organized under the laws of the United States; and 3) the suit arises out of a transaction involving international or foreign banking.'" <u>Pinto v. Bank One Corp.</u>, 2003 WL 21297300, at *2 (S.D. N.Y. June 4, 2003) (quoting <u>First Nat'l Bank v. Promatek Med. Sys., Inc.</u>, 870 F. Supp. 234, 237 (N.D. Ill. 1994)); <u>accord</u> <u>Stamm v. Barclays Bank of N.Y.</u>,

4

        1996 WL 614087, at *2 [(S.D. N.Y. Oct. 24, 1996)]; <u>Bank of N.Y. v Bank of Am.</u>, 861 F. Supp. 225, 232 (S.D. N.Y. 1994).

<u>In re Currency Conversion Fee Antitrust Litig.</u>, 2003 WL 22097502, at *2 (S.D. N.Y. Sept. 10, 2003) (first alteration in original).

    This suit is plainly civil in nature.  One party in interest is a corporation organized under the laws of the United States; indeed, most of the card issuers are national banks.[1]  And this suit involves the extension of credit and collection of the same, both of which clearly involve banking transactions and financial operations.  See <u>In re Currency Conversion Fee</u>, 2003 WL 22097502, at *2 ("[T]he issuance of a credit card involves a traditional banking function such that Edge Act jurisdiction is warranted.") (citing <u>Pinto</u>, 2003 WL 21297300, at *3-5; <u>Clarken v. Citicorp Diners Club, Inc</u>., 2001 WL 1263366, at *1 (N.D. Ill. Oct. 22, 2001)).

    The only substantial question is whether the suit arises out of a transaction or transactions involving international or foreign banking.  In moving to remand the case, the Hardings rely heavily on <u>Telecredit</u>, while Counterclaim-Defendants urge the Court to follow <u>Pinto</u>.  The Court does not find any inconsistency between these cases.

---

[1] Based on the parties' submissions, the Court finds the following are national banks: Retailers (now known as Target National Bank); Citibank; Chase Bank USA, NA (successor in interest to Bank One Delaware, NA, a national bank); MBNA America Bank, NA; Providian National Bank and Bank of America, NA (successor in interest to Fleet Bank (RI), NA, a national bank).  Washington Mutual Bank is a federally-chartered savings and loan association.  The remaining Counterclaim-Defendants appear not to be federally chartered corporations.

Broadly speaking, Telecredit takes the view that, whatever the subject matter of some underlying transaction may be, it is the disputed transaction immediately before the court that matters for jurisdictional purposes. In Telecredit, the dispute was over chargebacks on purchases of offshore travel club memberships, but the banks, merchants and credit card processors were all apparently domestic entities. Accordingly, the Telecredit court found it had no jurisdiction. Telecredit, 679 F. Supp. at 1104 ("Following the defendant's reasoning would lead this court to find jurisdiction in every chargeback dispute involving a foreign product or service, consumed in the United States by an American consumer, sold by an American corporation, simply because the consumer purchased the product or service with her credit card.").

Pinto, which is factually similar to the case at bar, is not inconsistent with the principle enunciated in Telecredit because the transactions at issue in Pinto involved domestic issuing banks (on behalf of plaintiff credit card holders) and offshore merchant banks (which had contracted with offshore on-line gambling sites). See Pinto, 2003 WL 21297300, at *1, *3. (For a discussion of credit card transaction processing, see, e.g., Nat'l Bancard Corp. v. VISA USA, Inc., 779 F.2d 592, 594-96 (11th Cir. 1986) and Nat'l Bancard Corp. v. VISA, USA, 596 F. Supp. 1231, 1236-39 (S.D. Fla. 1984).)

As in Pinto, the Court concludes that for Edge Act jurisdictional purposes, the relevant banking transactions are between the issuing banks (here, Counterclaim-Defendants) and the casino's merchant banks. If the casino's merchant banks were

6

1  domestic, however, the only banking transaction that crossed the
2  foreign-domestic border was between a merchant bank and an on-line
3  gambling site.  Such a transaction would be too tangentially
4  related to this case to satisfy the Edge Act's foreign transaction
5  nexus requirement.  Indeed, none of the parties to that transaction
6  would even be before the Court.  If, on the other hand, the
7  merchant banks were foreign, then transactions between the issuing
8  banks and the foreign banks would be "transactions involving
9  international or foreign banking" within the meaning of the Edge
10 Act.

11      Applying this principle to this case, the Court begins by
12 observing that Citibank's notice of removal does not specify that
13 the merchant banks are foreign.  Rather, the notice simply asserts
14 that "[t]he Action is removable pursuant to Edge Act because . . .
15 the suit allegedly arises out of transactions involving
16 international or foreign banking."  Sept. 12, 2003 Notice of
17 Removal at 2.  And although Citibank notes that the transactions at
18 issue involved "foreign Internet gambling merchants," id. at 3, it
19 never suggests that the banks servicing these gambling merchants
20 were themselves foreign.  Cf. Pinto, 2003 WL 21297300, at *3 n.3
21 ("The Notice of Removal clearly states that '[a]t least some of the
22 transactions that are the subject of the complaint have been
23 processed by foreign banking or financial entities operating, on
24 behalf of internet casinos, through international credit card
25 banking systems.'") (emphasis added).

26      Counterclaim-Defendants have subsequently failed to show that
27 the transactions at issue involved foreign merchant banks.  Most

7

Counterclaim-Defendants never responded to Judge Walker's order requiring them to file supporting declarations establishing the identity of "the merchant banks involved in each of the transactions at issue in this case." May 27, 2005 Order at 2. Counterclaim-Defendant MasterCard responded by simply incorporating by reference its previously-aired argument that "other grounds for Edge Act jurisdiction can apply even if the merchant bank is not foreign." Joinder of Cross-Def. Mastercard in Supp. Mem. Regarding Edge Act Jurisdiction at 2. Counterclaim-Defendants Discover, Citibank and Washington Mutual Bank were similarly non-responsive, requesting that "the Hardings be required to identify the specific charges or transactions that they contend were made for Internet gambling and that are the subject of the Cross-Complaint." Statement of Cross-Defs. Citibank et al. in Resp. to Order to Provide Information Regarding Merchant Banks at 2. Of course, this request is not well-taken because Counterclaim-Defendants, not the Hardings, bear the burden of establishing that removal was proper. See Gaus, 980 F.2d at 566-67.

Despite these failures, Judge Walker gave Counterclaim-Defendants Visa, MasterCard and Discover another opportunity to demonstrate that the relevant merchant banks were foreign by asking them to submit their "rules governing the location of merchant banks." June 3, 2005 Order at 1. In response, Visa International's Vice-President of Global Compliance, Robert Alandt, noted in a declaration that it had regulations that "require that a merchant bank must be located in the same country as the merchants it services (except that any banks within the Visa Europe Region

8

can sign any merchants located in that Region)." Alandt Decl. ¶ 4. But Mr. Alandt undermined the significance of this statement by acknowledging that "[t]here are very limited exceptions to these Regulations, and exceptions would require approval by the Visa International Regional Board with jurisdiction over the merchant. I am not aware of any instance where such approval has been given in connection with Internet gambling." Id. ¶ 5. MasterCard responded similarly, arguing that, "the applicable Bylaws and Rules Manuals of MasterCard International [to Internet gambling merchants operating from off-shore locales] create a presumption that the acquirers that service such merchants are also located outside the United States." Mastercard's Submission in Response to June 3, 2005 Order at 2. In short, these statements do not demonstrate that the particular transactions in this case involved foreign merchant banks.

Mindful of the presumption that removal statutes are to be strictly construed, Telecredit, 679 F. Supp. at 1103, and that generally "courts have interpreted § 632 narrowly," Bank of N.Y., 861 F. Supp. at 232, the Court finds that there is not an adequate basis to conclude that the transactions at issue here were foreign. Visa and MasterCard have not sufficiently demonstrated that their general rules regarding merchant banks actually applied to the relevant transactions here. Other Counterclaim-Defendants have failed to provide any evidence whatsoever that the relevant merchant banks were foreign. The Court declines to order any additional briefing because Counterclaim-Defendants have already been permitted to file two supplemental briefs on this matter.

9

Therefore, the Court finds that it has no jurisdiction pursuant to the Edge Act over this case.

## II. Alternative Bases for Federal Jurisdiction

In their supplemental papers, some Counterclaim-Defendants contend that the Court has general federal question jurisdiction under 28 U.S.C. § 1331, because (1) the Hardings seek a declaration that the banks' conduct is prohibited by the USA PATRIOT Act and (2) the case was properly removed under 28 U.S.C. § 1441(a), the general removal statute.

Alternative grounds for jurisdiction are unavailable to Citibank and Retailers, the only two Counterclaim-Defendants that had been served with the Hardings' counterclaims when the notice of removal was filed. A defendant seeking to remove a case to federal court must do so within thirty days of being served with the complaint. 28 U.S.C. § 1446(b). The notice of removal "'cannot be amended to add a separate basis for removal jurisdiction after the thirty day period.'" Arco Envtl. Remediation, LLC v. Dept. of Health & Envtl. Quality, 213 F.3d 1108, 1117 (9th Cir. 2000) (quoting O'Halloran v. Univ. of Washington, 856 F.2d 1375, 1381 (9th Cir. 1988)); id. ("[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction.") (quoting 16 Moore's Federal Practice § 107.30[2][a][iv]). Accordingly, Citibank and Retailers must rely on the Edge Act because that was the only basis for removal specified in the removal notice.

Whether those Counterclaim-Defendants who were not served in

10

State court prior to removal may rely on alternative bases for jurisdiction is less clear. The parties cite no cases that address facts similar to those here, and the Court has located none. It is true that unserved Counterclaim-Defendants had no opportunity to augment the jurisdictional bases advanced by the removing Counterclaim-Defendants. However, the removal statute elsewhere denies unserved parties the opportunity to assert their preferences regarding removal. For example, "[o]rdinarily, under 28 U.S.C. § 1446(a), all defendants in a state action must join in the petition for removal, except for nominal, unknown or fraudulently joined parties. This general rule applies, however, only to defendants properly joined and served in the action." Emrich v. Touche Ross & Co, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (citations omitted). Hence, unserved defendants who would prefer to remain in State court cannot prevent removal.

Here, a rule allowing Counterclaim-Defendants not served in State court to assert alternative bases for federal jurisdiction would be unworkable. The Court has already found that the Notice of Removal fails to state a proper basis for federal jurisdiction, and therefore the counterclaims against Citibank and Retailers must be remanded. Allowing those Counterclaim-Defendants who were not served in State court to remain in federal court would result in a bifurcated action, an outcome inconsistent with the removal statute's usual requirements that defendants must unanimously join in removal and that an entire suit must be transferred. E.g., 28 U.S.C. § 1441(c) (providing that an "entire case may be removed" when a federal question claim is "joined with one or more otherwise

11

non-removable claims"). Therefore, the Court concludes that the entire action must be remanded even if federal jurisdiction under 28 U.S.C. § 1331 exists over the Hardings' counterclaims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Hardings' motion to remand (Docket No. 121) and hereby REMANDS the case to Superior Court of California for the County of Alameda. The Court DENIES the motions to compel arbitration (Docket Nos. 35, 40 and 41); the motions to stay (Docket Nos. 42 and 48); and the Hardings' motions for leave to file an amended cross-complaint (Docket Nos. 157 and 163), without prejudice to refiling these motions in State court. The Hardings' objections to evidence in Counterclaim-Defendants' declarations are overruled as moot. The Clerk is directed to close the file and terminate all other pending motions.

IT IS SO ORDERED.

Dated: 6/30/06

_____
CLAUDIA WILKEN
United States District Judge

12